1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  **PAMELA COLE,** | ) **CASE NO.  CV 04-2000-MAN** |
| | ) |
| 12              **Plaintiff,** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| 13         **v.** | ) |
| | ) |
| 14  **JOANNE B. BARNHART,** | ) |
| **Commissioner  of  the  Social** | ) |
| 15  **Security Administration,** | ) |
| | ) |
| 16              **Defendant.** | ) |
| | ) |

17

18      Plaintiff filed a complaint on March 25, 2004, seeking review of

19 the decision of the Social Security Commissioner ("Commissioner"),

20 denying her application for supplemental security income ("SSI").  On

21 April 15, 2004, the parties filed a "Consent to Proceed Before a United

22 States Magistrate Judge," pursuant to 28 U.S.C. § 636(c).  The parties

23 filed a Joint Stipulation on February 1, 2005, in which:  Plaintiff

24 seeks an order reversing the Commissioner's decision denying benefits

25 and remanding for the payment of benefits or, alternatively, remanding

26 the case to the Commissioner for a new hearing; and Defendant requests

27 that the Commissioner's decision be affirmed.  The Court has taken the

28 parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI dated September 1, 1998. (Administrative Record ("A.R.") 75-76.)[1]   She claims to have been disabled since January 1, 1979, due to hearing loss, joint pain secondary to arthritis, probable systemic lupus erythematosus, and depression. (A.R. 75, 356.)  She has no past relevant work experience. (A.R. 357, 359.)

The Commissioner initially denied Plaintiff's claim for benefits, and on reconsideration.  (A.R. 70-73, 64-67.)  On January 11, 2000, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Walter Fisher ("ALJ").  (A.R. 37-49.)  In a May 17, 2000 written decision, the ALJ denied Plaintiff's application for benefits, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 4-6, 22-28.)  Plaintiff sought review of that decision in this Court and, on July 23, 2002, the Court entered judgment on the parties' stipulation to remand this case for further proceedings.  (A.R. 397-402.)

In that Stipulation, the parties agreed that:

The ALJ shall offer Plaintiff a new hearing, opportunity to
testify and opportunity to submit additional evidence.  Upon

---

[1]   Plaintiff previously filed an application for SSI on September 29, 1995, which was denied in a May 8, 1997 written decision. (A.R. 53-57.)

2

1    remand, the ALJ will reassess the credibility of Plaintiff's

2    subjective claims, giving clear and convincing reasons in

3    accordance with SSR 96-7p if he wishes to reject them.  The

4    ALJ should further address the lay witness evidence, including

5    written statements by third parties, giving specific reasons,

6    germane to each witness, if he wishes to reject that witness's

7    testimony.

8

9  (A.R. 400-01.)

10

11    On March 18, 2003, Plaintiff, who was represented by counsel,

12  testified at a new hearing before the ALJ.    (A.R. 372-93.)    In a

13  December 19, 2003 written decision, the ALJ denied Plaintiff's

14  application for benefits.[2]  (A.R. 355-60.)

15

16                    **SUMMARY OF ADMINISTRATIVE DECISION**

17

18    In his December 19, 2003 written decision, the ALJ found that

19

20    _____

        [2]    Although the record does not contain evidence of presentment

21  to or a decision by the Appeals Council of this 2003 decision, the
    parties do not raise this as an issue.  This Court assumes a final

22  decision of the Commissioner was made but, in any event, may undertake
    judicial review of the matter through the Commissioner's waiver of any

23  failure by Plaintiff to exhaust.  42 U.S.C. § 405(g)-(h); Cassim v.
    Bowen, 824 F.2d 791, 795 (9th Cir. 1987)(exhaustion requirement can be

24  waived by the Secretary or by the courts).  See also Bowen v. City of
    New York, 477 U.S. 467, 482-85, 106 S. Ct. 2022, 2031-32

25  (1986)(Secretary has the discretion to waive the exhaustion requirement,
    and courts can waive the exhaustion requirement in cases where "a

26  claimant's interest in having a particular issue resolved promptly is
    so    great    that    deference    to    the    agency's    judgment    is

27  inappropriate")(citations omitted).

28                                    3

1  Plaintiff has not engaged in substantial gainful activity since her

2  alleged onset date and has no past relevant work experience. (A.R. 358-

3  59.) He found that Plaintiff has "severe" impairments of hearing loss,

4  joint pain secondary to arthritis, probable systemic lupus

5  erythematosus, and depression, but that these impairments do not meet or

6  equal one of the listed impairments in Appendix 1, Subpart P, Regulation

7  No. 4. (A.R. 356, 359.) The ALJ further found that Plaintiff became an

8  "individual closely approaching advanced age" as of March 30, 2003, and

9  was a "younger individual" prior to that date pursuant to 20 C.F.R. §

10  416.963, and has a "limited" education pursuant to 20 C.F.R. § 416.964.

11  (A.R. 359.)

12

13     The ALJ concluded that Plaintiff's "allegations regarding her

14  limitations are not totally credible for the reasons set forth in the

15  body of the decision," and found that Plaintiff has the following

16  residual functional capacity:

17

18     [Plaintiff] is limited to lifting/carrying a maximum of 25

19     pounds frequently and 50 pounds occasionally, and is unable to

20     perform jobs requiring keen bilateral hearing. In addition,

21     [Plaintiff] should avoid hazardous work situations, and

22     dealing with crowds.

23

24  (A.R. 359.) In addition, the ALJ found that "[Plaintiff] has the

25  residual functional capacity to perform substantially all of the full

26  range of medium work" under 20 C.F.R. § 416.967, and that "[Plaintiff's]

27  capacity for medium work is substantially intact and has not been

28

4

1 compromised by any non-exertional limitations."[3]  (*Id.*)  The ALJ found

2 that Rules 203.18 and 203.25 of the Medical Vocational Guidelines (the

3 "Grids") direct a finding that Plaintiff is "not disabled."  (*Id.*)

4 Accordingly, the ALJ concluded that Plaintiff was not disabled within

5 the meaning of the Social Security Act.  (*Id.*)

6

7                         **STANDARD OF REVIEW**

8

9      This Court reviews the Commissioner's decision to determine if it

10 is free from legal error and supported by substantial evidence.  *See*

11 <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

12 Commissioner's decision must stand if it is supported by substantial

13 evidence and it applies the appropriate legal standards.  *See* <u>Saelee v.</u>

14 <u>Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more

15 than a mere scintilla, but less than a preponderance."  *Id*. (internal

16 citations and quotes omitted).

17

18      The Commissioner ordinarily resolves conflicts in the evidence, and

19 this Court must uphold the Commissioner's conclusions if the record

20 reasonably supports more than one rational interpretation of the

21 evidence.  *See* <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229 (9th Cir. 1987);

22 *see also* <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

23 However, the Court may not affirm the Commissioner's decision simply by

24 isolating a quantum of supporting evidence.  *See* <u>Hammock v. Brown</u>, 879

25 _____

26      [3]   "Medium work" involves "lifting no more than 50 pounds at a
   time with frequent lifting or carrying of objects weighing up to 25
27 pounds."  20 C.F.R. §§ 416.967(c); 404.1567(c).

28                                    5

1  F.2d 498, 501 (9th Cir. 1989).  The Court must consider the record as a

2  whole.  *See* Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).

3

4                                **DISCUSSION**

5

6      Plaintiff alleges two disputed issues.  First, Plaintiff contends

7  that the ALJ improperly relied on the Grids in finding that she is not

8  disabled.  Second, Plaintiff contends that the ALJ erred by failing to

9  properly  consider  an  opinion  from  a  non-examining  state  agency

10  physician.  (Joint Stip. at 4.)

11

12  **A.**   **The ALJ Improperly Relied On The Grids In Finding That Plaintiff**

13       **Was Not Disabled.**

14

15      At the fifth, and last, step in the analysis of whether a claimant

16  is disabled, the ALJ must consider whether the claimant's impairment

17  "prevent[s] her from doing any other work."  Holohan v. Massanari, 246

18  F.3d 1195, 1200 (9th Cir. 2001).  The ALJ considers the claimant's

19  residual functional capacity, age, education, and past work experience

20  to determine whether the claimant can do other work.  *Id.*  If, after

21  considering these factors, the ALJ concludes that the claimant cannot

22  perform her past work or other work, she is disabled.  20 C.F.R. §§

23  404.1520(f); 20 C.F.R. 416.920(f).  If the claimant can work, the

24  Commissioner must show that there are a significant number of jobs in

25  the national economy she can perform.  This must be established by

26  either:  (1) the testimony of a vocational expert; or (2) reference to

27  the Grids.  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

28
                                      6

1    In assessing a claimant's residual functional capacity, the ALJ

2  must consider the limitations that impair a claimant's ability to work,

3  which are divided into two categories:  exertional and non-exertional.

4  Exertional limitations affect the claimant's ability to meet a job's

5  strength demands and include the limitations on the ability to sit,

6  stand, walk, lift, carry, push, or pull.  *See* 20 C.F.R. § 404.1569a

7  (containing examples of exertional limitations).  Non-exertional

8  limitations are those that do not affect the claimant's ability to meet

9  a job's strength demands.  *See* 20 C.F.R. §§ 404.1569a(c) and 416.969a(c)

10  (examples of non-exertional limitations include nervousness, depression,

11  difficulty concentrating, or difficulty understanding or remembering

12  directions); Social Security Ruling 83-10, 1983 WL 31251, **6-7

13  (1983)(defining   nonexertional   impairments,   limitations,   and

14  restrictions).

15

16    When a claimant suffers from exertional limitations, but not non-

17  exertional limitations, the ALJ may apply the Grids, at step five, to

18  match the claimant with appropriate work.  <u>Holohan</u>, 246 F.3d at 1208;

19  <u>Reddick v. Chater</u>, 157 F.3d 715, 729 (9th Cir. 1998); <u>Burkhart v. Bowen</u>,

20  856 F.2d 1335, 1340 (9th Cir. 1988).  However, an ALJ "may apply the

21  grids in lieu of taking testimony of a vocational expert <u>only</u> when the

22  grids accurately and completely describe the claimant's abilities and

23  limitations," and not in cases where the Grids do not accurately account

24  for a claimant's limitations.[4]   <u>Reddick</u>, 157 F.3d at 729 (emphasis

25  _____

26    [4]   However, in <u>Desrosiers v. Secretary of Health and Human Serv.</u>,
   846 F.2d 573 (9th Cir. 1988), the Ninth Circuit stated that the
27  existence of a minor non-exertional impairment will not preclude the use
   of the Grids.  Accordingly, in order to decide whether the Grids may be

28                                        7

1  added); *see also* <u>Holohan</u>, 246 F.3d at 1208 (as the Grids "are based only

2  on strength factors," they are sufficient to meet the Commissioner's

3  burden at step five "only when a claimant suffers only from exertional

4  limitations").

5

6      Plaintiff contends that the ALJ erred in relying solely upon the

7  Grids in finding that Plaintiff is not disabled, because Plaintiff

8  suffers from non-exertional limitations.  These limitations arise from

9  her "severe" non-exertional impairments consisting of hearing loss and

10 depression, which cannot be accounted for by the Grids.  (Joint Stip. at

11 5.)

12

13     It is clear that the ALJ found that Plaintiff has "severe" joint

14 pain, probable systemic lupus erythematosis, hearing loss, and

15 depression.  (A.R. 356.)   In setting forth Plaintiff's residual

16 functional capacity, the ALJ found that Plaintiff has non-exertional

17 limitations arising from these impairments, *to wit*, that she "is unable

18 to perform jobs requiring keen bilateral hearing" and "should avoid

19 hazardous work situations, and dealing with crowds."   (A.R. 359.)

20 Nevertheless, the ALJ relied upon the Grids in determining that

21 Plaintiff is not disabled thereunder, stating that "[Plaintiff's]

22 capacity for medium work is substantially intact and has not been

23 compromised by any non-exertional limitations."  (A.R. 359.)

24

25

26 applied or whether the testimony of a vocational expert is needed, the
   ALJ must first determine whether the non-exertional impairment found to
   exist significantly limits the claimant's ability to do a full range of
27 work at the appropriate exertional level.  *Id*. at 577.

28

1    Defendant maintains that Plaintiff's non-exertional limitations in

2  this case (keen bilateral hearing loss, the need to stay away from

3  hazardous job situations, and the preclusion from being around crowds)

4  are not "significant limitations" on her ability to perform work

5  activities.  (Joint Stip. at 9-10.)  Citing <u>Polny v. Bowen</u>, 864 F.2d

6  661, 663-64 (9th Cir. 1988), Defendant maintains that the ALJ

7  appropriately relied upon the Grids, because Plaintiff's non-exertional

8  limitations did not "significantly limit" her ability to perform work

9  activities.  In addition, Defendant relies upon Social Security Ruling

10 85-15, which states that "a person . . . who is restricted only from

11 being . . . near dangerous moving machinery is an example of someone

12 whose environmental restriction does not have a significant effect on

13 work that exists at all exertional levels."  Defendant further contends

14 that Plaintiff's preclusion from being around crowds is not a

15 "significant limitation," because "unskilled jobs normally do not

16 involve working with people, much less crowds of people."  (Joint Stip.

17 at 10-11)(citing 20 C.F.R. Pt. 404, Subpart P, Appendix 2, Section

18 200.00(h)(4)(i)("While illiteracy or the inability to communicate in

19 English may significantly limit an individual's vocational scope, the

20 primary work functions in the bulk of unskilled work relate to working

21 with things (rather than with data or people) and in these work

22 functions at the unskilled level, literacy or the ability to communicate

23 in English has the least significance")).

24

25    Clearly, the ALJ found that Plaintiff suffered from "severe" non-

26 exertional impairments that resulted in non-exertional limitations.  The

27 Court cannot confirm whether the ALJ's finding that Plaintiff can

28

1    perform work in the national economy -- in light of her non-exertional

2    limitations -- is correct without vocational expert testimony on this

3    issue.  Defendant's reliance on Polny, *supra*, is misplaced.  In Polny,

4    the Ninth Circuit held that the ALJ erred by not seeking the testimony

5    of a vocational expert where the claimant had non-exertional limitations

6    (that is, was limited to jobs that were not highly stressful, did not

7    require comprehension of complex instruction, and did not require

8    dealing with the public).  864 F.2d at 663-64.  The Ninth Circuit, in

9    Polny, reasoned that "where, as here, a claimant's nonexertional

10   limitations are in themselves enough to limit his range of work, the

11   grids do not apply, and the testimony of a vocational expert is required

12   to identify specific jobs within the claimant's abilities." *Id*.  Thus,

13   Polny suggests that, in view of Plaintiff's combination of three

14   different types of "severe" non-exertional limitations (environmental,

15   mental, and hearing), seeking testimony from a vocational expert is

16   necessary in this case.   Furthermore, Defendant's argument that

17   Plaintiff's non-exertional limitations do not "significantly limit" her

18   ability to perform work activities is undermined by Fanning v. Bowen,

19   827 F.2d 631, 633 n.3 (9th Cir. 1987), which held that a finding of

20   "severity" automatically satisfied the more than "slight or minimal"

21   standard for finding a "significant work-related limitation" under the

22   second prong of Listing 12.05(C).

23

24      Moreover, the Commissioner's regulations suggest that reliance on

25   the Grids alone is improper in this case.  Social Security Ruling 83-14

26   states that:

27

28
                                       10

*No table rule applies to direct a conclusion of 'Disabled' or 'Not disabled' where an individual has a nonexertional limitation or restriction imposed by a medically determinable impairment.*   In these situations, the table rules are used, as a framework for decisionmaking.

1983 WL 31254, *1 (1983)(emphasis added).   While Social Security Ruling 85-15 states that a sole restriction from working near dangerous moving machinery does not have a "significant effect on work that exists on all exertional levels," that ruling does not support Defendant's contention that the testimony of a vocational expert was unnecessary here, especially in view of the totality of Plaintiff's non-exertional limitations.

Indeed, Social Security Ruling 85-15 discusses the difficulty in assessing the impact of a hearing impairment, such as Plaintiff's limitation regarding keen bilateral hearing, on a claimant's ability to work, and states:

Communication is an important factor in work.   The inability to hear, because it vitally affects communication, is thus of great importance.   However, hearing impairments do not necessarily prevent communication, and differences in types of work may be compatible with various degrees of hearing loss. Occupations involving loud noise, such as in printing, have traditionally attracted persons with hearing impairments, whereas individuals with normal hearing have to wear ear

11

1        protectors to be able to tolerate the working conditions.  On

2        the other hand, occupations such as bus driver require good

3        hearing.  *There are so many possible medical variables of*

4        *hearing loss that consultation of vocational reference*

5        *materials or the assistance of a [vocational expert] is often*

6        *necessary to decide the effect on the broad world of work.*

7

8   SSR 85-15, 1985 WL 56857, *7 (emphasis added).

9

10       Social Security Ruling 85-15 also discusses the impact of mental

11  impairments on a claimant's ability to work and states that:   "[t]he

12  basic mental demands of competitive, remunerative, unskilled work

13  include the abilities (on a sustained basis) to . . . respond

14  appropriately to supervision, coworkers, and usual work situations," and

15  "[a] substantial loss of ability to meet any of [these] basic work-

16  related activities would *severely limit* the potential occupational

17  base."  SSR 85-15, 1985 WL 56857, *4 (emphasis added).  Here, it appears

18  that clarification is required from a vocational expert as to the impact

19  on Plaintiff's job prospects of her preclusion from being around

20  "crowds."

21

22       The ALJ's finding that "[Plaintiff's] capacity for medium work is

23  substantially intact and has not been compromised by any non-exertional

24  limitations" is not based on substantial evidence and is not in

25  accordance with the applicable legal standards.  Accordingly, the ALJ's

26  failure to elicit testimony from a vocational expert and his sole

27  reliance upon the Grids in determining that Plaintiff is not "disabled"

28
                                      12

1  constitutes reversible error.

2

3  **B.    The March 12, 2001 Physical Residual Functional Capacity Assessment**

4      **Completed By The State Agency Doctor Was Properly Addressed By The**

5      **ALJ.**

6

7      According to 20 C.F.R. § 404.1527(f)(2)(i), "administrative law

8  judges must consider findings of State agency medical and psychological

9  consultants or other program physicians or psychologists as opinion

10  evidence, except for the ultimate determination about whether you are

11  disabled.  *See* § 404.1512(b)(6)."   Furthermore, according to Social

12  Security Ruling 96-6p, "[a]dministrative law judges and the Appeals

13  Council may not ignore [opinions of State agency medical and

14  psychological consultants and other program physicians regarding the

15  nature and severity of an individuals impairments] and must explain the

16  weight given to these opinions in their decisions."

17

18      Plaintiff contends that the ALJ erred in failing to discuss

19  specifically the non-examining state agency's March 12, 2001 opinion

20  (A.R. 452-59) that Plaintiff was limited to performing essentially

21  "sedentary" work.[5]   (Joint Stip. at 13.)   Specifically, Plaintiff

22  contends that:  "the ALJ failed to provide any analysis as [to] why the

23  _____

24      [5]    "Sedentary work" involves "lifting no more than 10 pounds at
   a time and occasionally lifting or carrying articles like docket files,
25  ledgers, and small tools.  Although a sedentary job is defined as one
   which involves sitting, a certain amount of walking and standing is
26  often necessary in carrying out job duties.  Jobs are sedentary if
   walking and standing are required occasionally and other sedentary
27  criteria are met."  20 C.F.R. §§ 404.1567, 416.967.

28

1  opinion was rejected"; and the ALJ "simply ignored the relevant

2  findings" in that opinion.  (*Id.*)

4       In his decision, the ALJ stated that:

6       Left hip x-ray in February 1999 was normal, as were nerve

7       conduction tests of the upper extremities and left lower limb

8       performed in December 1998, with "no evidence of peripheral

9       neuropathy, carpal tunnel syndrome, or other focal

10      compression" (Exhibit AC1). *A State Agency medical consultant*

11      *in March 2001 reported diagnoses of early degenerative*

12      *arthritis, degenerative disc disease, and right ear hearing*

13      *loss (Exhibit C7F).* January 2001 through September 2002

14      records from King Drew Medical Center indicate pain complaints

15      (Exhibit C14F). Questionable lupus, and a history of ear

16      surgeries and vertigo were also reported (Exhibit C16F). In

17      September 2002 [Plaintiff] was reported to be 4 years status

18      post bilateral tibial tendinitis. In January 2003 an

19      audiologist reported normal hearing in the left ear, with

20      moderate to severe conductive hearing loss for the right ear.

21      Optic testing was negative, as were Dix Hallpike tests for

22      both ears. Positional nystagmus was negative in all positions

23      tested. An incident of vertigo in 2002 was also reported.

24      Allergic rhinitis and vertigo were reported in July 2003.

26          . . . .

14

1          The credible medical evidence indicates that [Plaintiff]

2     can lift/carry up to 25 pounds frequently and 50 pounds

3     occasionally, with no significant limitation in sitting,

4     standing or walking.  In addition, she should avoid hazardous

5     job situations, or jobs requiring keen bilateral hearing.  The

6     record indicates mild functional limitations secondary to

7     Depression, which is consistent with [Plaintiff's] testimony.

8     [Plaintiff's] ability to engage in substantial gainful

9     activity is not significantly reduced by her allegation of

10    aversion to crowds.  *The lifting/carrying restriction reported*

11    *by the non-examining medical consultant in Exhibit C7F is not*

12    *credited because it is not supported by medical*

13    *signs/laboratory findings; and is inconsistent with the*

14    *record.*

15

16  (A.R. 356-57; emphasis added).

17

18      The ALJ's decision shows that he did consider and provide reasons

19  for rejecting the March 12, 2001 state agency doctor's opinion, which is

20  marked as Exhibit C7F and contained in the record at A.R. 452-58,

21  despite Plaintiff's assertion to the contrary.  Thus, the narrow

22  argument presented by Plaintiff -- that the ALJ's failure to consider

23  and discuss the March 12, 2001 state agency physician's opinion

24  constitutes error -- is unavailing.

25

26      The records shows that the ALJ evidently adopted the April 27, 1999

27  Residual Functional Capacity Assessment completed by a different state

28

1  agency physician, finding that Plaintiff could perform work at the

2  "medium" level with additional non-exertional limitations.  (A.R. 258-

3  64.)   In this assessment, the physician noted that there were "minimal

4  x-ray findings" and "[minimal] neurological findings," and that

5  Plaintiff's claimed pain her hips was not supported by x-rays, which

6  were "normal."  (A.R. 263-64.)   The opinions of other physicians --

7  examining physicians and non-examining, testifying medical experts --

8  may constitute substantial evidence upon which an ALJ may rely, when

9  they are properly supported.[6]  *See, e.g.,* <u>Morgan v. Commissioner of Soc.</u>

10 <u>Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert

11 opinions may serve as substantial evidence when "they are supported by

12 other evidence in the record and are consistent with it").  Accordingly,

13 no error has been shown based on Plaintiff's second contention.

14

15 **C.    <u>Remand Is Required</u>.**

16

17      Having found the ALJ's decision deficient, the Court must decide

18 whether to award benefits or remand for further proceedings.  Here,

19 because the testimony of a vocational expert is required to determine

20 whether Plaintiff can perform work in the national economy, remand is

21

22      [6]    X-rays in the record are consistent with this state agency
   physician's statement about the objective findings this physician relied
23 upon.  (*See, e.g.,* A.R. 122 -- February 18, 1999 x-ray showing
   "[r]adiographically normal left hip," 125 -- January 29, 1999 EMG
24 showing "no radiculopathy of right upper limb" and "no indication of
   carpal tunnel syndrome," 138 -- December 4, 1998 EMG showing "[n]ormal
25 nerve conduction study of the right and left upper and left lower limb,"
   163 -- x-ray of left and right wrist showing "[n]o plain film evidence
26 of acute trauma," 175 -- April 9, 1998 x-ray showing "radiographically
   normal spine," 204 -- January 15, 1998 x-ray showing "[m]ild
27 degenerative disease of the lumbar spine.")

28                                      16

1   required.   *See* Burkhart, 856 F.2d at 1341 (remanding case to the

2   Secretary in order to elicit testimony of a vocational expert regarding

3   a claimant's ability to perform work in light of his non-exertional

4   limitations).   *See also* McAllister v. Sullivan, 888 F.2d 599, 603 (9th

5   Cir. 1989)(remand appropriate to remedy defects in the record).

6

7                              **CONCLUSION**

8

9        Accordingly, for the reasons stated above, the denial of benefits

10  is REVERSED, and this case is REMANDED for further proceedings

11  consistent with this Memorandum Opinion and Order.   Judgment shall be

12  entered reversing the decision of the Commissioner, and remanding the

13  matter for further administrative action consistent with this Memorandum

14  Opinion and Order.

15

16       IT IS FURTHER ORDERED that the Clerk of the Court shall serve

17  copies of this Memorandum Opinion and Order and the Judgment on counsel

18  for Plaintiff and for Defendant.

19

20       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

21

22  DATED: February 16, 2006

23

24                                        _____/s/_____

                                          MARGARET A. NAGLE

25                                        UNITED STATES MAGISTRATE JUDGE

26

27

28                              17